TERRELL, Justice.
Mr. Chief Justice ROBERTS, Mr.: Justice SEBRING, Mr. Justice HOBSON, Mr. Justice MATHEWS and Mr. Justice , DREW agree to affirmance, of, the judg- ■ ment in this case without opinion. The writer is also of the view .that the judgment should be affirmed but account of. the-fact we have had -nothing before that quite parallels it I'agree to affirmance for reasons disclosed by the record as follows:Harvey E. Kelly was divorced from Grace Lois Kelly, now Grace Lois Clark, in July 1947, for habitual intemperance. The custody of Betty Jo Kelly, an adopted minor daughter, was given the father with the - right of visitation by the mother at reasonable times and places. September 18, 1952 the chancellor refused to modify the custodial order except to provide that “Betty Jo Kelly, shall be permitted to visit the said Grace Lois Kelly at such reasonable times and places as said minor child may desire.”
This appeal is from a decree of the chancellor refusing' to clarify the order of September 18, 1952, the theory of the petition to clarify being that Harvey E. Kelly and his present wife have “schemed and planned in every way possible to alienate the affections of the child, and, in company with his unscrupuloys, frustrated, vicious wife, has continued in an unorthodox, underhanded, diabolical way, managed to accomplish what is normally completely opposed by the court.” It further charges that Mr. and Mrs. Kelly have done all in their power to alienate the child from petitioner and have persuaded the school where she is attending to join with them in this, that petitioner has made every effort to visit the child but her effort has been defeated by Mr. and Mrs. Kelly, who resent all her effort' in this.
The point for determination is whether or not the trial court committed error in' refusing to modify the custodial order in response to the petition of May 22, 1953.
*830 Detail of the factual complex will best demonstrate the reasons for refusing to clarify the decree. At the time of the present suit the minpr, Betty Jo Kelly, was thirteen years old. The evidence shows that the habitual intemperance of appellant has not abated, that her manner and attitude are repulsive to the child, who has grown to have very little respect for her foster mother, that Mr. and Mrs. Kelly have made no attempt to alienate her from her foster mother, whom the child says positively that she does not want to see. In separate interviews of the chancellor with the minor she confirmed this as her feeling toward appellant. It is further revealed that the present Mrs. Kelly has changed for better the home environment of the minor. The new environment ■“took” like a vaccine, it washed the aroma of liquor from the home circle and substituted for it mother responsibility, the concept of good citizenship and respect for the rights of others.
The chancellor felt that under such circumstances an order requiring the child to visit her foster mother would be unwise, and refused to grant it. The foster mother appears to have been responsible for the situation she found herself in, her compelling vice had shot her emotions to pieces, her conduct repelled rather than drew the child to her, she had in no wise shared with it the creative activities of the home. Love, confidence and appreciation were not in her book, she had neglected to instill the things that are commendable and beautiful, and the home was in no sense a place where fellowship, good will, and neighborliness abound. It was a typical skid-row tragedy problem, more sociological than legal; it was a case of parental delinquency where the home had become a place to sleep, change clothes, grab a bite to eat and little more, where the parent spent her time neglecting to acquire the qualities she would like her child to reflect; it is no wonder that at thirteen the child becomes cold and indifferent to the foster mother. When parental nurture .reaches this nadir there is nothing that the decree of a chancellor can do to retrieve it.
We do not see how any other decree would have been appropriate. It is accordingly affirmed. I am authorized to say that ROBERTS, C. J., and MATHEWS, J., concur in these views.
Affirmed.
ROBERTS, C. J., and SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.
THOMAS, J., dissents.